

**SIGNED this 17th day of July, 2012.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 11-61125-CAG |
| | § | |
| KENNETH P. RIEVES, | § | CHAPTER 13 |
|     Debtor. | § | |

#### <u>MEMORANDUM OPINION ON DEBTOR'S MOTION TO AVOID LIEN</u>

Before the Court is the Motion to Avoid Lien Pursuant to 11 U.S.C. § 522(f) filed October 7, 2011 as part of Debtor's Chapter 13 Plan (docket no. 2). The Debtor, Kenneth P. Rieves, moves to avoid a judicial lien against his homestead in the amount of $80,000. This lien was granted by decree in the district court of Freestone County to secure a judgment in favor of the Debtor's ex-spouse, Joan E. Yankie, to reimburse Ms. Yankie for improvements on the land made with her separate property funds.

After considering the Motion and the Objection and Response thereto, as well as the parties' contentions at the hearing as summarized below, for the following reasons, the Court finds that the Motion to Avoid Lien should be GRANTED in part and DENIED in part.

**FACTUAL & PROCEDURAL BACKGROUND**

In mid-2000, while the Debtor and Ms. Yankie were dating, the Debtor purchased ten acres in Freestone County, which the parties agree constituted separate property belonging to the Debtor. In early 2001, Ms. Yankie sold her separate home and moved into a trailer with the Debtor on his ten-acre property. In November 2001, the couple got married. During their marriage, Ms. Yankie used some of her separate property funds to make improvements to the Debtor's ten acre property. According to her testimony at the hearing on January 18, 2012, Ms. Yankie used the proceeds from the sale of her separate home, cashed in her $10,000 annuity, and took a $6,500 loan out on her life insurance policy. During their marriage, the couple jointly purchased an adjoining 3.1 acres of land.

According to her testimony, in 2003, Ms. Yankie left the property due to marital issues, went back in 2004 in an attempt to make the marriage work, and then ultimately left again in 2005. On June 9, 2006, the couple was divorced by decree of the district court of Freestone County.

As part of the divorce decree, the state court confirmed the contents of each party's separate estate before dividing up the marital estate. The court confirmed that the ten acres purchased by the Debtor prior to the marriage, more particularly described in Exhibit A to the decree, "has been and is the separate property of" the Debtor. (Debtor's Exhibit M-1, Divorce Decree, at 2.) The court then confirmed that Ms. Yankie's separate property consisted of "any interest in her retirement and/or 401k plan by virtue of her employment that existed as of the date of marriage, November 30, 2011." (*Id.*)

Under the paragraph entitled "Division of Marital Estate," the court executed "a just and right division of the parties' marital estate, having due regard for the rights of each party." In

2

doing so, the court awarded certain property to each party as his or her "sole and separate property," divesting the other party of "all right, title, interest, and claim in and to that property.

In particular, the court awarded to the Debtor, among other things, (1) "the marital residence located on the separate property confirmed to [the Debtor];" and (2) an additional "3.1 acres of land more particularly described in Exhibit B" attached to the decree. (Divorce Decree, at 3.) The court awarded to Ms. Yankie, among other things, "$63,557 cash for her separate property funds used as down payment and/or on the marital residence located on the husband's separate property." (*Id.* at 4). Accordingly, the court ordered that Ms. Yankie recover a judgment from the Debtor in that amount. The court described this judgment as "part of the division of community property and [Ms. Yankie's] reimbursement claim" and clarified that it "shall not constitute or be interpreted to be any form of spousal support or alimony." (*Id.*) "For the purposes of securing the judgment," the court granted Ms. Yankie "an equitable lien against the real property located in Freestone County Texas which is more particularly described in Exhibits A & B" (i.e. against all 13.1 acres of real property). (*Id.* at 5.)

On October 7, 2011, the Debtor filed for bankruptcy under Chapter 13. Within the Debtor's Chapter 13 Plan, the Debtor filed his Motion to Avoid Lien Pursuant to 11 U.S.C. § 522(f), claiming that he was entitled to avoid the judicial lien granted in the divorce decree.

On December 20, 2011, Ms. Yankie filed an Objection to the Motion (docket no. 28). In her Objection, Ms. Yankie's sole argument was that "section 522(f)(1)(A) does not apply to a lien created by a divorce decree as part of a divorce property division," citing ***Farrey v. Sanderfoot***, 500 U.S. 291 (1991).

On January 1, 2012, the Debtor filed a Response (docket no. 33). In his response, he argued that Ms. Yankie's lien never attached to the Debtor's homestead property in the first

3

place because an equitable lien for reimbursement is not one of the types of liens that is enforceable against a homestead under § 50 the Texas Constitution. The Debtor further argued that even if the lien is enforceable, the relevant issue under *Sanderfoot* is whether the Debtor "possessed an interest to which a lien attached before it attached," and in this case the Debtor had a pre-existing separate property interest in part of the land to which the lien attached.

On January 18, 2012, the Court heard arguments from counsel on the Motion. At that time, the Debtor indicated that he would soon be filing an amended Schedule C to elect the Texas exemptions, rather than the federal exemptions. On November 30, 2011, the Debtor filed the Amended Schedule C. (docket no. 16).

On February 22, 2012, the Court reconvened the parties for a status hearing, after which the Court confirmed that the amended schedules effectively mooted Ms. Yankie's then-pending Objection to Exemption (docket no. 26). At the hearing, the Court determined that the principal arguments raised at the January hearing with respect to the Motion to Avoid Lien were not affected by the change in exemptions.

Also at this February 22nd hearing, Ms. Yankie noted that she might file a request with the district court of Freestone County for clarification of the court's divorce decree, to clarify the precise type of lien that was granted in the decree. The state court eventually granted Ms. Yankie's request for clarification on June 8, 2012, which the Court will discuss below, after discussing the parties contentions at the hearing.

### PARTIES' CONTENTIONS AT THE HEARING

At the hearing on January 18, 2012, the Debtor proffered two separate and independent grounds for avoiding the lien. First, he argued that the lien did not properly attach in the first place because an equitable lien for reimbursement is not one of the types of liens that is

4

enforceable against an individual's homestead under Article XVI, Section 50(a) of the Texas Constitution. Second, he argued that even if the lien properly attached, the portion of the lien that was applied to the ten acres is still avoidable pursuant to 11 U.S.C. § 522(f)(1), specifically under *McVay v. Parrish*, 7 F.3d 76 (5th Cir. 1993), because the Debtor had a pre-existing separate property interest in the ten acres before the lien attached. The Debtor conceded both in his Response and at the hearing that if the Court finds that the lien did properly attach in the first place, the Debtor would only be able to avoid the portion of the lien that attached to the ten acres, and would not be able to avoid the portion of the lien that attached to the 3.1 acres.

In response to the Debtor's arguments at the hearing, Ms. Yankie argued that both *Sanderfoot* and *Parrish* are distinguishable from this case, in part because those decisions predated the amendment to Article XVI, Section 50(a) of the Texas Constitution, as well as revisions in the Texas Family and Property Codes. Under the Texas Constitution, a homestead is "protected from forced sale, for the payment of all debts" with certain enumerated exceptions for certain types of debts. The amendment provides an additional exception for "an owelty of partition imposed against the entirety of the property by a court order or by a written agreement of the parties to the partition, including a debt of one spouse in favor of the other spouse resulting from a division or an award of a family homestead in a divorce proceeding." Tex. Const. art. XVI, § 50(a)(3). Ms. Yankie argued that the judicial lien is the result of an owelty of partition, and thus the lien properly attached and is enforceable against the homestead.

During her opening statement, Ms. Yankie argued that "an owelty lien is not subject to § 522(f), period." Ms. Yankie then went on to assert that even if an owelty lien is subject to § 522(f), applying § 522(f) to this case would not serve its legislative purpose, which, according to *Sanderfoot*, is to thwart creditors who rush to obtain a judgment. In this case, Ms. Yankie

5

argues that she obtained the lien not to defeat the Debtor's interest, but to protect her own interest in the homestead. Ms. Yankie concedes that the ten acres are "technically" the Debtor's separate property, but argues that Ms. Yankie used her separate personal funds to contribute to improvements on that property and thus has "an equitable right or interest, or perhaps even a resulting constructive trust" as a result of her contributions.

### STATE COURT'S CLARIFICATION ORDER ON DIVISION OF PROPERTY

On June 8, 2012, several months after this Court heard arguments from counsel, the state court granted Ms. Yankee's request for clarification of the divorce decree. The court issued a Clarification Order on Division of Property, which stated, in part:

> The Court, after hearing the evidence and arguments of counsel, finds that the Court has continuing jurisdiction to render further orders to enforce the division of property made in the Decree of Divorce and to assist in the implementation of or to clarify the prior order.
>
> The Court finds the underlying divorce case was not resolved by a property settlement between the parties but was disputed and tried to the Court for which the Court's judgment awarded real estate to KENNETH PAUL RIEVES in the Decree of Divorce dated June 9, 2006 and that a portion was Husband's separate property and the remaining portion was Husband and Wife's property that was acquired as community. The Court finds that improvements on all the land were made in part with Wife's separate property and that the improvements are incapable of partition and the house value would be damaged by division of the land, and that therefore an equitable lien and an owelty lien of partition on all the real property awarded as described in Exhibits A & B attached hereto are necessary and appropriate to secure the judgment award of $63, 557 to JOAN ELAINE YANKIE (f/k/a JOAN ELAINE RIEVES).
>
> IT IS THEREFORE ORDERED that for the purposes of securing the judgment awarded to [Ms. Yankie] in the Decree of Divorce dated June 9, 2006, for the sum of $63,557, together with post judgment interest beginning at the rate of 5% per annum, as security for the debt of one spouse in favor of the other spouse resulting from an award of the family homestead in a divorce proceeding, that [Ms. Yankie] is granted an equitable lien, and owelty lien of partition, as allowed by Section 50 of the Texas Constitution, which owelty lien is imposed against the entirety of the real property located in Freestone County, Texas, which is more particularly described in Exhibit A & B attached hereto until the obligation of [the Debtor] described in the divorce decree is fully paid.

6

(Clarification Order on Division of Property, District Court of Freestone County, entered June 8, 2012, docket no. 65.)

### ANALYSIS

As previously stated, the Debtor has proposed two separate and independent grounds for avoiding the lien. First, he argued that the judicial lien, originally described in the divorce decree as an "equitable lien" is not one of the types of liens that are enforceable against an individual's homestead under Article XVI, Section 50(a) of the Texas Constitution. Second, he argued that even if the lien properly attached, the Debtor can still avoid the portion of the lien that was applied to the ten acres pursuant to 11 U.S.C. § 522(f)(1) because under *McVay v. Parrish*, 7 F.3d 76 (5th Cir. 1993), the Debtor had a pre-existing separate property interest in the ten acres before the lien attached. The Court will address each of these arguments in turn.

### I. Attachment of the Lien under the Texas Constitution

"Under Texas law, a lien is unenforceable against homestead property . . . unless it secures payment for certain debts provided for in Tex. Const. art. XVI, § 50." *McCombs v. H.D. Smith Wholesale Drug Co.*, 659 F.3d 503, 508, 509 n.9 (5th Cir. 2011) (internal citations omitted). An equitable lien for reimbursement is not one of the enumerated exceptions provided in the Texas Constitution; a lien arising from an "owelty of partition," however, is an exception under § 50(a)(3) of the Texas Constitution. With regard to whether the judicial lien granted by the Freestone County court in this case is enforceable, the Court finds that the Clarification Order on Division of Property is dispositive (docket no 65). The state court clarified that it granted both an equitable lien and an owelty lien, "as allowed by Section 50 of the Texas Constitution." In describing the debt, the court mirrored the language of § 50(a)(3). Therefore, in giving deference to the state court's application of the applicable law, this Court finds that the lien

imposed in the divorce decree was, in fact, an owelty lien that properly attached to the full 13.1 acres of the property awarded to the Debtor in the divorce decree.

## II. Avoidance of the Lien under 11 U.S.C. § 522(f)

"Section 522(f) allows a debtor to avoid the fixing of a judicial lien on property made exempt as a Texas homestead." *McVay v. Parrish*, 7 F.3d 76, 77 (5th Cir. 1993). "The key portion of § 522(f) states that 'the debtor may avoid the fixing of a lien on an interest . . . in property." *Farrey v. Sanderfoot*, 500 U.S. 291, 296 (1991). According to the Supreme Court, "Congress enacted § 522(f) with the broad purpose of protecting the debtor's exempt property." *Id.* at 297. "Section 522(f), by its terms, extends this protection to cases involving the fixing of judicial liens onto exempt property." *Id.* According to the Court in *Sanderfoot*, "the text, history, and purpose of § 522(f)(1)" indicate that the provision is not concerned with "liens that fixed on an interest before the debtor acquired that interest." *Id.* at 298. "For these reasons, it is settled that a debtor cannot use § 522(f) to avoid a lien on an interest acquired after the lien attached." *Id.* (internal citations omitted). Therefore, in determining whether a lien can be avoided under 11 U.S.C. § 522(f), under *Sanderfoot*, the "critical question" is "whether the debtor ever possessed the interest to which the lien fixed, *before* it fixed." *Id.* at 299 (emphasis added). "Whether [the debtor] ever possessed an interest to which the lien fixed, before it fixed, is a question of state law." *Id.*

In *Farrey v. Sanderfoot*, the question before the Supreme Court was whether § 522(f)(1) permitted Sanderfoot to avoid the fixing of Farrey's lien on the property interest that Sanderfoot obtained in the divorce decree. *Id.* at 295-96. The Court looked to Wisconsin law to determine whether Sanderfoot "ever possessed an interest to which the lien fixed, before it fixed." Id. at 299. The Court determined that Sanderfoot did not possess a pre-existing interest and, therefore,

8

could not avoid the lien.

The facts of *Sanderfoot* are as follows. Prior to the divorce judgment, Sanderfoot and Farrey, husband and wife, respectively, "held title to the real estate in joint tenancy, each possessing an undivided one-half interest." *Id.* "[T]he divorce decree extinguished these previous interests. At the same time, and in the same transaction . . . the decree created new interests in place of the old: for Sanderfoot, ownership in fee simple of the house and real estate; for Farrey, various assets and a debt of $29, 208.44 secured by a lien on Sanderfoot's new fee simple interest." *Id.* The Court concluded that "the lien could not have fixed on Sanderfoot's pre-existing undivided interest half interest because the divorce decree extinguished it." *Id.* "Instead, the only interest that the lien encumbers is debtor's wholly new fee simple interest. The same decree that awarded Sanderfoot his fee simple interest simultaneously granted the lien to Farrey." *Id.* "Sanderfoot took the interest and the lien together, as if he had purchased an already encumbered estate from a third party." *Id.* at 300. "Since Sanderfoot never possessed his new fee simple interest before the lien 'fixed', § 522(f) [was] not available to avoid the lien." *Id.*

The Fifth Circuit applied the legal principles established in *Sanderfoot* in **McVay v. Parrish**, 7 F.3d 76 (5th Cir. 1993). In *Parrish*, the Circuit acknowledged that the protection of § 522(f) is limited in that "a debtor cannot avoid a lien on an interest acquired after a lien attached." 7 F.3d at 77. Nevertheless, the Circuit distinguished the facts in *Parrish* from those in *Sanderfoot* and, accordingly, arrived at a different conclusion.

The facts of *Parrish* are as follows. Prior to the parties' divorce, the husband, Samuel Parrish, inherited a 23.15 acre tract of land from his mother, which under Texas law was his separate property. Later, as part of the divorce decree, the state court awarded a judgment in

9

favor of McVay in the amount of $76,500, representing half of the reimbursement to the community estate for improvements Parrish made to the land he inherited. This judgment was secured by an equitable lien against the land. *Id.* at 77. The Fifth Circuit applied Texas law to determine whether Parrish ever possessed an interest to which the lien fixed, *before* it fixed. The Circuit noted that Parrish acquired the land through inheritance as his separate property. "From that point on it was his separate property, as Texas law fixes the character of property as of the time of inception of title." *Id.* at 78 (citing ***Eggemeyer v. Eggemeyer***, 554 S.W. 2d 137, 140 (Tex. 1977)). The Circuit thus concluded that "the decree did not create a new property interest for Parrish as did the decree in *Farrey v. Sanderfoot*." *Id.* "Since Parrish's interest existed before the divorce and continued unaltered afterwards . . . the lien attaching to that property was avoidable under section 522." *Id.*

In this case, unlike in *Sanderfoot*, the Freestone County court did not "extinguish all previous interests the parties had in the property" by way of the divorce decree. *Id.* at 292, 299. To the contrary, the court confirmed the contents of each party's separate estate before dividing up the marital estate. In particular, the court confirmed that the 10-acre property the Debtor purchased prior to the marriage "has been and is the separate property of" the Debtor. (Divorce Decree, at 2.) Then, as part of the division of the marital estate, the court additionally awarded 3.1 acres of what was then community property to the Debtor. (*Id.* at 3) Finally, the court granted a lien against the full 13.1 acres. (*Id.* at 5.) To be clear, the newly encumbered 13.1 acres included the 10 acres described in Exhibit A (in which the Debtor had a pre-existing separate property interest) as well as the 3.1 acres described in Exhibit B (in which the Debtor acquired a new separate property interest by way of the decree).

10

With regard to the 10 acres that the Debtor purchased prior to the marriage, like in *Parrish*, the Debtor's separate property interest existed before the divorce and continued unaltered afterwards. With regard to the 10 acres, the decree did not create a new property interest for the Debtor as did the decree in *Sanderfoot*. Therefore, like in *Parrish*, the lien attaching to that property is avoidable under § 522(f). Accordingly, this Court finds that to the extent the judicial lien attached to the 10 acres in which the Debtor had a pre-existing interest, that portion of the lien CAN be avoided under § 522(f).

On the other hand, with regard to the 3.1 acres of property that the court awarded to the Debtor in the divorce decree, like in *Sanderfoot*, "at the same time, and in the same transaction," the decree created a new separate property interest for Mr. Rieves and simultaneously granted a lien against Mr. Rieves's newly acquired interest. Since Mr. Rieves never possessed his new interest in the 3.1 acres before the lien fixed, § 522(f) is not available to avoid the lien. Accordingly, this Court finds that to the extent the judicial lien attached to the 3.1 acres that were awarded to the Debtor in the decree, that portion of the lien CANNOT be avoided under § 522(f).

## CONCLUSION

IT IS, THEREFORE, ORDERED that the Debtor's Motion to Avoid Lien Pursuant to 11 U.S.C. § 522(f) filed October 7, 2011, as part of Debtor's Chapter 13 Plan (docket no. 2) is hereby GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that to the extent the judicial lien attached to the 10 acres in which the Debtor had a pre-existing interest, that portion of the lien CAN be avoided under § 522(f); and

11

IT IS FURTHER ORDERED that to the extent the judicial lien attached to the 3.1 acres which were awarded to the Debtor in the decree, that portion of the lien CANNOT be avoided under § 522(f).

*# # #*